[No. 21228. Department One. September 25, 1928.]

STANDARD OIL COMPANY OF CALIFORNIA, *Respondent*, v. C. E. MAYNARD et al., *Appellants*.

FARMERS STATE BANK, *Respondent*, v. C. E. MAYNARD *et al.*, *Appellants*.

SCHWENNE-THILL, INCORPORATED, *Respondent*, v. C. E. MAYNARD *et al.*, *Appellants*.[1]

*Hanna, Miller & Hanna*, and *Chamberlin & Wilkinson*, for appellants.

*McCarthy, Edge & Lantz*, for respondent Standard Oil Company.

*Pickrell & Stotler*, for respondent Farmers State Bank.

*M. S. Jamar* and *Thos. Neill*, for respondent Schwenne-Thill, Incorporated.

MITCHELL, J.—C. E. Maynard and his wife were the owners of a farm, and had possession and control of an adjoining farm under a contract of purchase, both in Whitman county. He had engaged in raising wheat a number of years, being well supplied with horses, cattle, machinery, farm tools and equipment. He became hopelessly involved, all of his real and personal property being mortgaged largely in excess of its reasonable market value. He owed approximately eight thousand dollars to unsecured creditors. His creditors, secured and unsecured, were pressing him for payments. On May 22, 1924, he and his wife executed and delivered a deed to their farm, an assignment of the contract for the purchase of the adjoining farm, and he a bill of sale of all the personal property on the farm to their sons Mark K. Maynard and Harold Maynard. Thereafter considerable of the personal property was sold, and on May 19, 1927, the remainder of the personal property was sold at a public sale conducted in the name of C. E. Maynard. In the meantime, certain unsecured creditors, namely, the Standard Oil Company of California, Farmers State Bank of Uniontown, Washington, and Schwenne-Thill, Inc., commenced separate actions against C. E. Maynard or him and his wife, all of which resulted in judgments in favor of the respective plaintiffs.

After the last sale of personal property, and before the proceeds were paid over, the three judgment creditors, by several writs, garnisheed certain funds derived from the sale or debts owing by

[1] Reported in 270 Pac. 289.

purchasers at the sale. Those holding such funds or being thus indebted admitted the same by their answers. C. E. Maynard answered, alleging that the funds and indebtedness garnisheed were not his but that they belonged to his sons. Upon leave of court, the two sons intervened and by their complaint claimed that all the funds and indebtedness garnisheed belonged to them. By a reply, each of the judgment creditors denied the allegations contained in the pleadings of C. E. Maynard and his sons. The garnishment actions were tried together by the court, with the result that findings, conclusions and judgment covering the three cases were entered in favor of the judgment creditors. The sons, Mark K. and Harold Maynard, have appealed.

The question involved is the good faith of the bill of sale of May 22, 1924, by the father to his sons, so far as the rights of these creditors are concerned, and on the appeal the controversy takes the form of exceptions to the findings of fact and conclusions of law entered and to the refusal of the court to sign those requested by the appellants.

The trial court filed a memorandum opinion reviewing the evidence, and, consistent therewith, signed formal findings as follows:

"(1)   That prior to May 22nd, 1924, defendant C. E. Maynard owned two farms, stock and farm equipment in Whitman county, Washington, and operated the farms with the equipment and with the assistance of the intervenors, his sons;

"(2)   That on the 22nd day of May, 1924, the defendant C. E. Maynard was indebted to divers persons, including the plaintiffs herein, in a large sum of money, to-wit: over $8,000, which was unsecured;

"(3)   That a short time prior to May 22nd, 1924, an attachment had been levied on the personal property owned by C. E. Maynard, and the suit of the plaintiff herein, Schwenne-Thill Company, had been commenced;

"(4)   That on the 22nd day of May, 1924, the defendant C. E. Maynard executed a purported bill of sale to the intervenors, for a nominal consideration of $1.00, by which he purported to sell to the intervenors 'all horses, cattle, farm machinery, threshing machines, engines, farm tools and farm equipment of every kind and nature and all the personal property of said grantor now on and about the farm of said grantor near Colton, Washington, subject to a chattel mortgage on the same, now held by the Exchange National Bank of Spokane, Washington;'

"(5)   That at the same time defendant executed a deed to 460 acres of land, known as the home place, and made an assignment of a contract of sale held by him for 620 acres of land known as the Biben's land for a nominal consideration, subject to the mortgage indebtedness and a balance due on the contract;

"(6)   That the personal property described in said purported bill of sale and the land described in the deed, and in the contract for purchase was all of the property owned by defendant C. E. Maynard;

"(7)   That at said time the intervenors were living on the farm with their father, the defendant C. E. Maynard, and continued to live thereon until the spring of 1926, when the intervenor, Mark K. Maynard, took up his residence in the state of Idaho, and the intervenor, Harold Maynard, left home and worked on the Coast for some time during the summer of 1926;

"(8)   That there was no consideration of any kind paid by the intervenors for any of said personal property mentioned in the said purported bill of sale, or for the said deed and said assignment of contract, and no change of possession took place; that the defendant, C. E. Maynard, continued to manage and to operate said farm and equipment the same as he had done before up until the time the land and personal property were so transferred; that said C. E. Maynard borrowed money for the operation of the farms, sold the crops, paid the expenses of operation and accounted therefor to the Exchange National Bank, the mortgagee; that he listed said personal property for taxation, as his own property for the years 1925, 1926 and 1927, the same as in former years, that he brought an action in his own name in the superior court to recover for the price of a team of horses sold by him at a public auction sale held in the fall of 1925, and for a pasture bill, and in the complaint in said action claimed the purchase price to belong to him and claimed the pasture to have been on said land and that the same was owned by him; that in the fall of 1925, he advertised for sale at public auction part of said personal property so owned by him and in the notice of sale he referred to the property to be sold as being owned by him, and in March, 1927, he advertised the remainder of said personal property to be sold at public auction and in the notice of sale referred to the property to be sold as being owned by him; that the intervenors never asserted ownership in the property, or any part thereof, but treated it as being owned by him;

"(9)   That the intervenor, Mark K. Maynard, during said time made a sworn return of his property for assessment purposes and in the assessment list made no mention of any of the property mentioned in the bill of sale, and during said time the intervenor, Harold Maynard, made no list of property for assessment purposes of any kind;

"(10)   That the intervenors knew of the existence of said attachment and of the commencement of the suit of Schwenne-Thill Company and knew that their father, C. E. Maynard, was indebted in a large amount that was unsecured, which he was unable to pay in due course, or at all, and knew that the property described in

the deed, assignment of contract and purported bill of sale was all of the property owned by the defendant, C. E. Maynard;

"(11) That the money and effects garnished by the respective plaintiffs herein were the proceeds of the sale of said personal property;

"(12) That the intervenors herein, Mark K. Maynard and Harold Maynard, during the trial herein, made some claim to one or more of the articles of personalty sold at said public auction on March 19th, 1927, as a gift, or as the issue of a gift or gifts, from defendant C. E. Maynard, but the court finds that no such gift, or gifts, were so made, and that no title to any article of personalty so vested in intervenors, or either thereof, or the wife of either thereof; that none of the proceeds of said sale of March 19th, 1927, was from any personalty whatsoever owned by said intervenors, or either thereof, or by any other person than defendant C. E. Maynard; that the proceeds of the sale of the personal property in the hands of the Security State Bank of Colton, Washington, garnishee herein, did not result from the sale of any personal property claimed by the intervenors, or either of them, as a gift, or gifts, from defendant C. E. Maynard;

"(13) That said bill of sale did not transfer any right, title or interest in and to said personal property, or any part thereof, to the intervenors, and there was no transfer of ownership thereto made in good faith; but the exclusive ownership of said property was at all times prior to the final disposition thereof, which took place on or about March 19th, 1927, in defendant C. E. Maynard; that the purported bill of sale thereof to the intervenors did not operate as a transfer thereof, or if it so operated the intervenors then and at all times thereafter held naked title thereto in trust for the defendant C. E. Maynard;

"(14) That on the 21st day of March, 1927, plaintiff Standard Oil Company of California regularly served a writ of garnishment in its above entitled action on the garnishee defendant Security State Bank of Colton, Washington; that at said time there was in the hands of said garnishee defendant the sum of $586.35, the proceeds of a part of said property so owned by the defendant C. E. Maynard; that on the 22nd day of March, 1927, said plaintiff, Standard Oil Company of California, regularly served a writ of garnishment in its above entitled action on the garnishee defendant F. A. Smith; that prior to the serving of said last mentioned garnishment, the plaintiff Schwenne-Thill, Inc., regularly served a writ of garnishment on the garnishee defendant F. A. Smith; that on April 2, 1927, plaintiff Farmers State Bank of Uniontown, Washington, regularly served a writ of garnishment in its said above entitled action on the garnishee defendants Ed Hoffman and Paul Heitstuman; that on the 20th day of May, 1927, plaintiff Standard Oil Company of California, a corporation, took judgment in its

said above entitled action, against the defendant C. E. Maynard in the sum of $1,480.78, together with the sum of $100.00 as attorneys' fees therein and $8.00 costs, which said judgment bears interest at the rate of 10% per annum from its said date of entry; that on the 8th day of July, 1927, plaintiff Schwenne-Thill, Inc., took judgment against the defendant C. E. Maynard in the sum of $4,946.52, and $350.00 attorneys' fees and $8.00 costs, which said judgment bears interest at the rate of 8% per annum from its said date; that on the 8th day of July, 1927, plaintiff Farmers State Bank of Uniontown, Washington, took judgment against the defendant C. E. Maynard, in the sum of $1,053.48 and $75.00 attorneys' fees and $10.00 costs."

On the findings, appropriate conclusions were signed and filed to the effect that the bill of sale from C. E. Maynard to his sons was not made in good faith, that the funds in the hands of the garnishee defendants and the amounts due by them were subject to the writs of garnishment sued out by the creditors, and that the intervenors complaints should be dismissed.

While there is, upon the face of the record, a conflict in the evidence as to a substantial part of the facts, we are satisfied that the findings are sustained by a preponderance of the evidence, and that out of the facts as found, the law expressed in the conclusions and judgment clearly arises.

Affirmed.

FULLERTON, C. J., FRENCH, TOLMAN, and PARKER, JJ., concur.